EXHIBIT "A"

## IN THE CHANCERY COURT OF TENNESSEE
## FOR THE TWENTY-FOURTH JUDICIAL DISTRICT AT PARIS, TENNESSEE

| | | |
|---|---|---|
| **BITMAIN TECHNOLOGIES GEORGIA LIMITED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No.: 26523 |
| | ) | |
| **OLD CONST LLC and TN WALL STREET, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### VERIFIED COMPLAINT

Plaintiff Bitmain Technologies Georgia Limited (hereinafter "Bitmain"), by and through counsel and pursuant to the Tennessee Rules of Civil Procedure and Title 29, Chapter 30, Part 1 of the Tennessee Code, hereby moves this Court for issuance of a writ of possession to expeditiously restore to Plaintiff's possession a total of 7,457 Hosted Servers (hereinafter defined) that Defendant Old Const LLC (hereinafter "Old Const") continues to possess unlawfully and that Old Const refuses to return to Bitmain, the rightful owner of the Hosted Servers. Bitmain, for its causes of action against Defendants, shows as follows:

### JURISDICTION AND VENUE

1.    Plaintiff Bitmain Technologies Georgia Limited ("Bitmain" or "Plaintiff") is a corporation incorporated under the laws of the State of Georgia, having its registered office at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076.

2.    Defendant Old Const. LLC is a Delaware Limited Liability Company, having its registered office at 254 Chapman Road, Suite 209, Newark, DE 19702.

FILED FOR
RECORD

SEP 04 2025
AT 2:30 O'CLOCK P M
ALBERT WADE, JR., C&M

3.    Defendant TN Wall Street, LLC ("TN Wall Street") is a Delaware Limited Liability Company, having its registered office at 8 The Green, Ste. A., Dover, Delaware 19901, and its principal place of business at 116 Agnes Road, Suite 200, Knoxville, Tennessee 37919.

4.    This court exercises personal jurisdiction over Old Const and TN Wall Street under Tenn. Code Ann. § 16-11-102 and has subject matter jurisdiction pursuant to Tenn. Code Ann. §§ 20-4-104, 29-30-102, and 29-30-106.

5.    Venue is proper in Henry County under Tenn. Code Ann. §§ 20-4-103, 20-4-104, and 29-30-102.

## FACTS

6.    Bitmain has initiated this action for a writ of possession due to Old Const's refusal to return to Bitmain its rightfully owned personal property that is currently located at 252 TN-140, Puryear, TN 38251 (the "Data Center Facility")[1].

7.    The Hosted Servers, the property at issue, are described in the Inventory List containing unique serial numbers and other identifying information, attached hereto as **Exhibit A.**

### *History of the Hosted Servers*

8.    On November 11, 2024, Bitmain entered into a Hosting Services Agreement with Old Const (the "HSA"), attached hereto as **Exhibit B**. Under the HSA, Old Const would provision data centers for the operation of the Hosted Servers that Bitmain would use for bitcoin mining.

9.    The HSA is a valid and enforceable contract.

---

[1] Upon information and belief, Defendant TN Wall Street, LLC owns the Data Center Facility in full.

10.    The HSA incorporated an Appendix I, outlining the number of Hosted Servers to be hosted by Old Const at the Data Center Facility.[2]

11.    The HSA required Old Const to, among other things, provision and operate the Data Center Facility, at which Bitmain would use the 7,457 Hosted Servers to mine bitcoin.

12.    The Hosted Servers are sophisticated electronic devices that are vulnerable to damage from a variety of sources, including water and moisture, temperature fluctuations, dust and debris, static electricity, and physical injury.

13.    The Hosted Servers are also valuable—worth thousands of dollars per device—and can be the target of theft. Accordingly, the HSA required Old Const to "use Industry Practices and install all necessary equipment . . . to ensure the safety and security of the BITMAIN Property against loss or damage of any kind." (**Exhibit B,** HSA, at 22, Art. 6.7).

14.    Under Article 8.1 of the HSA, Old Const acknowledged that Bitmain was the owner of the Hosted Servers and that Bitmain "holds all right, title, and interest in the Hosted Servers." (**Exhibit B,** HSA, at 28, Art. 8.1).

15.    Bitmain is the lawful owner of the Hosted Servers.[3]  See **Exhibit A,** Inventory List, which specifically identifies the serial numbers and other identifying information for the Hosted

---

[2] The total quantity of Hosted Servers was increased to 7,457 by the parties, pursuant to an email agreement to ensure the total mining capacity reflected in the HSA was reached.

[3] Defendant Old Const sought to purchase the Hosted Servers from Bitmain, but ultimately did not complete the agreement for such purchase. Instead, a subsidiary of Old Const's, 1969, LLC (that is not a party to this litigation), entered into an On-Rack Sale and Purchase Agreement with Bitmain for the purchase of the Hosted Servers. This agreement required 1969, LLC to pay the entire purchase price for the Hosted Servers, which it failed to do. As such, 1969, LLC was in breach of the On-Rack Sale and Purchase Agreement, which was terminated by Bitmain via letter to 1969 on August 22, 2025. This separate agreement has no bearing or import on the matter before the Court. Neither 1969, LLC nor Old Const has any right to possession or ownership of the Hosted Servers.

Servers currently being held improperly by Old Const at the Data Center Facility, owned by TN Wall Street, LLC.

16.     Bitmain has possessory right to the Hosted Servers.

17.     The 7,457 Hosted Servers have a fair market value of $20,799,000.00 and are capable of generating approximately 0.74 bitcoin per day. One Bitcoin currently trades for approximately $110,000, so Bitmain is losing over $81,400 revenue per day that the Hosted Servers are not operational. It was important to Bitmain that Bitmain's personnel have unfettered access to the Data Center Facilities to, among other things, ensure the safety and security of Bitmain's valuable property. Accordingly, the HSA provided that Old Const should not restrict Bitmain's access to the Data Center Facilities:

> Service Provider shall:
>
> (a)  provide all necessary support and cooperation for the operation, maintenance and security of the Hosted Servers by BITMAIN Personnel;
>
> (b)  …
>
> (c)  grant BITMAIN Personnel access into the Data Center Facility;
>
> (d)  permit BITMAIN Personnel to access and enter the Data Center Facility and related Premises on a 24-hour per day, 7-day per week basis to:
>
>> i.    obtain operational data from the Hosted Servers;
>>
>> ii.   inspect the conditions at the Data Center Facility to confirm compliance with this Agreement;
>>
>> iii.  inspect the Data Center Facility to ensure the safety of BITMAIN Property;
>>
>> iv.   perform maintenance on or repair the Hosted Servers as necessary in BITMAIN's opinion; and

4

     v.   inspect and confirm the inventory of Hosted Servers and
Inventory Assets.

**(Exhibit B,** HSA, at 23-24, Art. 6.9).

18.    In exchange for providing a secure facility with constant access to electric power and the internet in which Bitmain could use its Hosted Servers to mine bitcoin, Bitmain paid Old Const a monthly hosting service fee.

19.    Beginning on January 16, 2025, the Hosted Servers were powered-on to mine Bitcoin at the Data Center Facility.

20.    On August 30, 2025, while executing on a lawful writ issued by this Court, representatives of Bitmain removed miners that had been improperly and impermissibly moved from their original site to the Old Const site (the "North Miners"). During this retrieval, it was discovered that not only had the North Miners been moved to the Old Const site without Bitmain's knowledge or consent, but that thousands of the North Miners (greater than 5,000, upon information and belief), had also been installed, again without Bitmain's knowledge or consent, and were being used for bitcoin mining, all of the proceeds of which were presumably for the benefit of Old Const.

21.    Further, during the execution of the writ to secure possession of the North Miners, Bitmain representatives noticed that a portion of the Hosted Servers were not present in the same place as they had been during a previous inspection of the Data Center Facility conducted by Bitmain personnel, prior to Bitmain being denied access.

22.    Therefore, Bitmain has good faith and justifiable reasons to believe that its extraordinarily valuable Hosted Servers are in danger of being moved outside of this Court's jurisdiction, damaged, improperly used, or otherwise converted in violation of its lawful property rights.

5

### *Old Const's Failure to Maintain Stable and Sufficient Power*

23.    The Hosted Servers must be connected to electric power and to the internet to operate productively.  It therefore was critical to Bitmain in executing the HSA that Old Const be able to provide a constant flow of sufficient power to the Data Center Facilities.  Accordingly, Article 6.2 of the HSA required Old Const to "provide BITMAIN with sufficient . . . power load and facilities . . . reasonably required for the normal operation of the Hosted Servers." (**Exhibit B,** HSA, at 18, Art. 6.1).

24.    Because it was important to Bitmain that the Hosted Servers be productively running as much as possible, the HSA required Old Const to keep the Hosted Servers on-line on the monitoring software and contributing its computational power to the mining pool as designated by Bitmain at least 95% of the time, on average.  To measure this, the HSA defined "Online Status Ratio" as follows:

> "Online Status Ratio" means the amount resulting from the following calculation:
>
> $\sum Daily\ Hashrate \times 24(h)$
>
> *Divided by*
>
> *Number of Hosted Servers x Rated Hashrate of the Hosted Servers x Theoretical Online Hours*
>
> *Where:*
>
>> (a) *"Daily Hashrate"* is the hashrate of the applicable Hosted Servers detected by ANTPOOL;
>>
>> (b) *"Theoretical Online Hours"* means the number of hours in such applicable Billing Period which may exclude the time during which a compulsory power curtailment occurs as a result of a government directive, Governmental Order or load limitation program implemented by a Governmental Authority or relevant power supplier, provided that such compulsory power curtailment is not caused by Service Provider (including as a consequence of a breach of any Government Order or the Power Purchase Agreement by Service Provider) and the Service Provider notifies BITMAIN of such compulsory power curtailment and provides evidence of such power curtailment acceptable to BITMAIN at its sole discretion acting reasonably.
>
> For the avoidance of doubt, calculation of Online Status Ratio for the purposes of Section 3.5, Section 3.9 and Section 6.11 shall not be adjusted for any technical failures or any power curtailment, power reduction, power restriction or power outage due to any reason, including any event of Force Majeure.

(**Exhibit B,** HSA, at 7, Art. 1.1, *s.v.* "Online Status Ratio").

25.    The HSA requires Old Const to maintain an Online Status Ratio of at least 95%.

**Exhibit B,** HSA, at 24, Art. 6.11(a)).

26.    If the Online Status Ratio dropped below 95% in a given month, Old Const had a period of one (1) month to remedy such substandard condition, after which Bitmain was entitled to "terminate [the HSA] with immediate effect and without any liability for breach of contract." **(Exhibit B,** HSA, at 24-25, Arts. 6.11(b)-(c)).

27.    On April 15, 2025, the Data Center Facility was powered down by Old Const and on April 21, 2025, all Bitmain personnel were asked to leave the Data Center Facility.

28.    As a result, the Hosted Servers were offline and Bitmain was unable to monitor its property.

### *Old Const Refuses to Allow Access to the Data Center Facility*

29.    Old Const denied Bitmain access to inspect the Data Center Facility on April 28, 2025.

30.    Upon arrival of Bitmain personnel at the Data Center Facility on April 28, 2025, Old Const informed Bitmain that Old Const would not allow Bitmain to enter the site to inventory or inspect the Hosted Servers. Bitmain now suspects that such access was denied to conceal the fact that many of the North Miners, which Old Const had no right to install, use, or benefit from, had in fact been installed and were being used for that very purpose; that is, the benefit of proceeds from cryptocurrency mining for Old Const.

31.    To date, Old Const has refused to allow Bitmain access to the Data Center Facility to inspect or retrieve its rightfully-owned property.[4]

---

[4] During the execution of the writ for the North Miners, Bitmain representatives were limited to specific areas and did not see evidence that the Hosted Servers were operational or even present.

### TN Wall Street, LLC is Named Solely as Current Landowner

32.    TN Wall Street, LLC is named in this action solely in their capacity as the current owner of the Data Center Facility.

33.    It appears from the official land records of Henry County that TN Wall Street, LLC has the right to control the Data Center Facility given its ownership of said real property and the fact that there is no Lease or Memorandum of Lease concerning the Data Center Facility of record in the office of the Henry County Register of Deeds.

34.    TN Wall Street, LLC is named as a party to ensure that any judgment or decree affecting the Data Center Facility can be properly entered and enforced (i.e., so that Plaintiff may be granted the right to access the Data Center Facility to retrieve the Hosted Servers if the Court orders possession of the Hosted Servers restored to Plaintiff).

35.    Although Old Const purports to control the Hosted Servers, TN Wall Street, LLC may actually possess the Hosted Servers given that they are believed to be physically located on property owned and controlled by TN Wall Street, LLC[5], which has the practical ability to control both access to the property and disposition of the Hosted Servers through its ownership and control of the Data Center Facility.

### Bitmain Demands Immediate Access to Retrieve Miners

36.    Bitmain and Old Const attempted to negotiate an amicable resolution to the instant matter. These negotiations lasted for some months until Bitmain concluded that those negotiations were no longer fruitful.

---

[5] Bitmain has reason to believe that some of the Hosted Servers may have been moved from the Data Center Facility without its knowledge or consent, but cannot verify that fact without confirmation from Defendants or an inspection by Bitmain personnel.

37.     Bitmain's counsel subsequently issued a termination letter to Old Const on August 22, 2025, not only terminating the HSA, but also seeking immediate, unfettered access to the Data Center Facility where the Hosted Servers are held assistance required to remove the Hosted Servers.[6] A copy of the demand letter is attached hereto as **Exhibit C.**

38.     Under the HSA, Bitmain was entitled to access the Data Center Facility to remove the Hosted Servers within five (5) days of the notice of termination. Accordingly, Bitmain demanded a response from Old Const by Wednesday, August 27, 2025.

39.     The response received by Bitmain's counsel, received on the last day of the deadline, did not substantively respond to Bitmain's demand and requested an unreasonable extension to respond, necessitating the immediate filing of this Verified Complaint.

### COUNT I– RECOVERY OF PERSONAL PROPERTY UNDER
### T.C.A. § 29-30-106

40.     The foregoing paragraphs are incorporated as if fully restated herein.

41.     Bitmain is the lawful owner of the Hosted Servers, tangible property, the current location of which is unknown, but that is contractually supposed to be located at the Data Center Facility.

42.     Old Const is aware that Bitmain is the lawful owner of the Hosted Servers, but willfully and in bad faith refuses to return the Hosted Servers or allow Bitmain access to the Data Center Facility to take possession of the Hosted Servers or even confirm their presence at the Data Center Facility.

---

[6] While there are other contractual disputes mentioned in this demand letter, none are a part of this action, which is limited to the recovery of the property described herein under T.C.A. § 29-30-106. Bitmain is preparing a separate arbitration demand against Old Const for any other damages or relief associated with the HSA, as required by its terms.

43.     By refusing to return the Hosted Servers or allow Bitmain to access the Data Center Facility to take possession of the Hosted Servers, Old Const has prevented Bitmain from exercising its right of possession over the Hosted Servers.

44.     Old Const obtained its current unlawful possession of the Hosted Servers through breach of the HSA, fraud and/or misrepresentation.

45.     Bitmain is entitled to a writ of possession for the Hosted Servers pursuant to Title 29, Chapter 30, Part 1 of the Tennessee Code and is entitled to a writ of immediate possession of the Hosted Servers pursuant to Tenn. Code Ann. § 29-30-106(a)(1)(B).

## COUNT II– RESTRAINING ORDER UNDER
## T.C.A. § 29-30-105

46.     The foregoing paragraphs are incorporated as if fully restated herein.

47.     Bitmain requests, pursuant to Tenn. Code Ann. § 29-30-105 that this Court issue an order, while this matter is pending and until any writ of possession issued by this Court in this matter is fully executed, restraining Defendants or their representatives from damaging the Hosted Servers, concealing the Hosted Servers, or removing the Hosted Servers from the Data Center Facility or this Court's jurisdiction.

48.     Bitmain requests that the Court's restraining order make clear that each Hosted Server removed from the Data Center Facility after its issuance, or each Hosted Server damaged after the restraining order's issuance, is an individual violation of the restraining order, and the Defendants or their representatives are subject to statutory penalties for every such violation, as listed in Tenn. Code Ann. § 29-30-105, and be deemed guilty of a Class C misdemeanor for each violation, punishable by a fine not to exceed Fifty Dollars ($50.00) and imprisonment for not more than thirty (30) days.

49.     Bitmain requests that any such violations be clearly cumulative, so that the deterrent effect of the restraining order is commensurate with the value of the property at issue.

**PRAYER FOR RELIEF**

WHEREFORE, Bitmain respectfully requests that this Court:

1.     Issue a Writ of Possession, directing the appropriate officer to take possession of the Hosted Servers described herein and deliver it to Plaintiff;

2.     Issue an Order that Plaintiff is the rightful owner of the Hosted Servers and entitled to immediate possession upon posting of a bond as required by law in an amount set by the Court, not to exceed value of the Hosted Servers, in the form of either a cash bond, or in the form of a surety bond from a reputable and recognized provider;

3.     Issue a restraining order to prevent Defendants from damaging the Hosted Servers, concealing the Hosted Servers, or removing the Hosted Servers from the Data Center Facility or this Court's jurisdiction upon the posting of a cash bond of $10,000; and

4.     For such further and other relief and the Court deems just and proper.

Dated September 4, 2025                    Respectfully submitted,

**ATTORNEYS FOR BITMAIN TECHNOLOGIES GEORGIA LIMITED**

George Robert Whitfield III, BPR#28055
Greer, Greer & Whitfield, Attorneys, PLLC
Post Office Box 385 | Paris, Tennessee 38242
Phone: (731) 642-8781
Email: rob@greergreerandwhitfield.com

Randall L. Saunders w/ permission by: GRWhitfield III
BPR #028055

Randall L. Saunders, BPR# 34532
NELSON MULLINS RILEY & SCARBOROUGH LLP
949 Third Avenue, Suite 200 | Huntington, West Virginia 25701
Telephone: (304) 526-3500 | Facsimile: (304) 526-3599
Email: randy.saunders@nelsonmullins.com

## VERIFICATION

I, Yiwei Mao, lawful representative of the Plaintiff, do affirm under penalty of perjury that the matters set forth in the foregoing Verified Complaint are true, except as to those matters which are therein stated on information and belief, and as to those matters, I believe the same to be true.

I declare under penalty of perjury under the law of Tennessee that the foregoing is true and correct.

Executed on the _____4th_____ day of September, 2025, at

Shenzhen, People's Republic of China.


[PRINTED NAME]___Yiwei Mao___


[SIGNATURE]___Yiwei Mao___

## Cost Bond

The undersigned attorneys are surety for court costs taxed to Plaintiff in this cause, subject to the limitations of TENN. CODE ANN. § 20-12-125.

George Robert Whitfield III, BPR#28055

Randall L. Saunders, BPR# 34532